E-FILED
Thursday, 25 October, 2018  01:24:11 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATE DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 15-CR-20057 |
| vs. | Hon. James E. Shadid, |
| | Chief United States District Judge, |
| SARAH NIXON, | Presiding |
| Defendant. | |

**MOTION FOR NEW TRIAL**

Defendant Sarah Nixon, through her attorney, Thomas W. Patton, moves this Court for a new trial based on newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In support of her motion, Ms. Nixon states as follows:

### I. INTRODUCTION

"The Due Process Clause guarantees litigants an impartial judge, reflecting the principle that "no man is permitted to try cases where he has an interest in the outcome." *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005) (*quoting In re Murchison*, 349 U.S. 133, 136 (1955)). "To prove disqualifying bias, a petitioner must offer either direct evidence or 'a possible temptation so severe that we might presume an actual, substantial incentive to be biased.'" *Id*. (*quoting Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1380 (7th Cir.1994) (en banc)).

Ms. Nixon has direct evidence that United States District Judge Colin S. Bruce, the judge that presided over her trial, had a disqualifying bias against her and in favor of the

1

government. During Ms. Nixon's trial Judge Bruce discussed the merits of her trial and her testimony with a member of the United States Attorney's Office prosecuting the case. During the discussion Judge Bruce lamendted that the trial appeared to be going in Ms. Nixon's favor, calling her testimony "bullshit," complained that Ms. Nixon might not be convicted because the prosecutors were deficient in their cross-examination of her, and told the member of the prosecutor's office how the prosecution improve its cross-examination of Ms. Nixon. The prosecution hid these emails from the defense for a year and a half. Judge Bruce also failed to disclose his misconduct.

When his improper conduct was revealed, Judge Bruce denied that he engaged in any misconduct. The emails between Judge Bruce and the United States Attorney's Office in this case prove otherwise. And this was not an isolated incident. Judge Bruce has demonstrated a pattern of bias in favor of the government by engaging in similar, unethical *ex parte* communications with the United States Attorney's office in other cases.

Ms. Nixon is entitled to a new trial. The newly discovered evidence of Judge Bruce's bias, and the United Attorney's office's failure to timely disclose the bias, deprived Ms. Nixon of a fair trial before an unbiased judge.

## II. FACTS

A grand jury in the Central District of Illinois, Urbana Division, charged Ms. Nixon with removing her child from the United States with the intent to obstruct the lawful exercise of another person's parental rights in violation of 18 U.S.C. § 1204. (Dkt. entry 7.) The case was prosecuted by Elly M. Peirson and Lauren S. Kupersmith, both trial lawyers with the Department of Justice's Child Exploitation and Obscenity Section (CEOS). Ms.

Peirson was an Assistant United States Attorney for the Central District of Illinois who was assigned to CEOS at the time of Ms. Nixon's trial. The case was assigned to United States District Judge Colin S. Bruce.

On Tuesday, December 13, 2016, a jury trial commenced. (Dkt. entry dated 12/13/2016.) The trial continued on Wednesday, December 14, 2016, Thursday, December 15, 2016, and Friday, December 16, 2016. Ms. Nixon was the sole witness to testify on Friday, December 16, 2016. (Dkt. entry 143.) When Judge Bruce stopped for the day Ms. Nixon had finished her direct testimony but was in the middle of the government's cross-examination, which was being conducted by Ms. Kupersmith. (Dkt. entry 143 at 232). Before dismissing them for the weekend, Judge Bruce admonished the jurors not to discuss the case with anyone.

> Now, since it's a Friday, I am going to give you the more detailed admonition just so it's stuck in your mind because, in my experience, weekends are the worst.

> Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, friends, anybody involved in the trial, or anyone else.

> This includes, for example, face-to-face conversations, any communication using any electronic device or media, text messaging, social networking sites -- that includes Facebook -- any other form of communication. My order still applies for the duration of this trial. I am directing you to stay off of your Facebook account.

> You may tell your family and your employer that you are serving on a federal jury, so you can explain why you have to be in court. You must not communicate with them about the case, or anyone who is involved in the case, until you have reached a verdict.

> Remember: If anyone approaches you and tries to talk to you about the case, you don't tell your fellow jurors. You tell me or my courtroom deputy or one of the court security officers.

We have had some press in here again today; so if you see anything in the newspaper, hear anything on the radio, don't read it. Don't listen to it. Turn it off.

Remember: Keep an open mind. You have not heard all the evidence yet. You haven't heard my instructions. You haven't heard the arguments from the attorneys. All right?

I know it might be hard this weekend when people say, "What are you doing?" You can't tell them. "I'm in a federal jury trial. I can't tell you what it's about." All it takes is one person responding to you; and, suddenly, you're tainted, and you're off the jury, a waste of everybody's time. So don't do that. All right?

(*Id*. at 233-34). Judge Bruce did not follow his own advice.

At 4:26 p.m. on Friday, December 16, 2016, Judge Bruce received an email in his official U.S. Court email, Colin_Bruce@usdoj.gov, from Lisa Hopps, a Paralegal Specialist with the United States Attorney's office, from her official Department of Justice email account, Lisa.Hopps@usdoj.gov, with the subject line "Jim's Farewell." The body of the email states: "And just WHERE WERE YOU today?????" (Exhibit A.) Judge Bruce's recusal order (entered well after the trial ended and while Ms. Nixon's appeal was pending), explains Ms. Hopps' email related to former United States Attorney Jim Lewis's retirement party held in Springfield on Friday, December 16, 2016. (Dkt. entry 161.)

On Saturday, December 17, 2016, at 2:11 p.m., Judge Bruce replied to Ms. Hopps' email. Judge Bruce responded:

Trial. Elly.

Where evidently the Elly and Co. decided they did not want to win by letting an entirely inexperienced DOJ attorney cross examine THE DEFENDANT. (Here are some words she evidently does not know: "alleged' "supposedly" "your story")

Are you ever going to come over here and do another trial?

(Exhibit A.)

At 4:00 p.m. Ms. Hopps replied: "Are you kidding me?!?! Wow. Never ):. Staci is

the paralegal in training over there so I'm o-u-t.

At 5:10 p.m. Judge Bruce replied:

Damn it! I could use a little Lisa Hopps in the courtroom just to see you.
Staci is doing a good job, so you trained her well.

So far in this trial in the over one hour cross-examination, the DOJ attorney
has done a WONDERFUL job of repeating the bullshit the defendant said as
if the defendant's story was all fact.

How about the BASIC cross-examination skill of saying "and then the
ALLEGED event took place" or "and then, SUPPOSEDLY [sic] this
happened" or "so ACCORDING TO YOUR STORY . . . ."

This trial went from a slam-dunk for the prosecution to about a 60-40 for the
defendant, and there is more cross-examination to go . . . . . .

(Exhibit A.)

At 7:55 p.m., Ms. Hopps replied: "DITTO my friend!! She is, I'm happy for her.

OMG. How do you sit through that? I can just see you looking like you're bored to death,

but on the inside you're craking yourself up with jokes! I would NOT be able to make eye

contact with you. hahahahaha"

On Sunday, December 18, 2016, at 12:45 p.m., Judge Bruce replied as follows:

I work hard not to try any of the cases.
I actually have a sign on the bench from Judge Baker that says "DO NOT
TRY THE CASE".

When I'm not making internal jokes or when I'm not completely bored, lots
of times I am cringing.

I really cringed when the inexperienced DOJ attorney starting crossing the

> defendant in the case.. [sic]
> During this cross-examination, I keep wanting to say "Seriously? That is your plan? Repeat the testimony of the defendant as though it was fact and then say, 'Right?'"
> And if you were in the courtroom, yes, I would be giving you looks that would make you crack-up.

(Exhibit A.)

On Monday, December 19, 2016, Ms. Nixon's trial resumed. (Dkt. entry dated 12/19/2016.) Neither Judge Bruce nor the United States Attorney's office disclosed the improper *ex parte* communications that had occurred on Friday, Saturday, and Sunday. Testimony wrapped up on Monday, and the following day, December 20, 2016, the jury found Ms. Nixon guilty. (Dkt. entry dated 12/20/2016.) On May 19, 2017, Judge Bruce sentenced Ms. Nixon to 26 months of imprisonment to be followed by one year of supervised release. (Dkt. entry 120.) At no time from the end of the trial to sentencing did either Judge Bruce or the United States Attorney's office disclose the improper *ex parte* communication that occurred during the trial.

Ms. Nixon appealed her conviction. (Dkt. entry 123.) The Federal Defender's office withdrew from representing Ms. Nixon, and attorney Sarah Schrup was appointed to represent Ms. Nixon on appeal. (Dkt. entry 128.) Ms. Schrup filed Ms. Nixon's opening brief on January 19, 2018. *United States v. Nixon*, No. 17-2132 (7th Cir.), dkt. entry 14. The government filed its response brief on April 9, 2018. *Id.*, dkt entry 23. Ms. Schrup filed Ms. Nixon's reply brief on April 23, 2016. *Id.*, dkt entry 31. The Seventh Circuit heard oral argument on May 17, 2018. *Id.*, dkt entry dated 05/17/2018. At no time during the filing of the briefs or prior to oral argument did either Judge Bruce or the United States reveal the improper *ex parte* communication that occurred between Judge Bruce and Ms. Hopps

during Ms. Nixon's trial.

On May 30, 2018, First Assistant United States Attorney Patrick D. Hansen sent a letter to Ms. Schrup informing her and Ms. Nixon, for the first time, that an employee of the United States Attorney's office had improper *ex parte* communications with Judge Bruce during Ms. Nixon's trial. (Exhibit A.) The improper emails between Ms. Hopps and Judge Bruce were attached to the letter. *Id*.

On June 19, 2016, Ms. Schrup filed in the district court a motion to supplement the record on appeal with the letter from Mr. Hansen and the attached emails. (dkt entry 153) As Ms. Schrup did not have electronic filing credentials in the Central District, she sought and received help from the Clerk's office to file the motion. Following a telephone conversation with staff in the Clerk's office, Ms. Schrup emailed the motion to the Clerk's office. The email noted the sensitive nature of the emails and stated Ms. Schrup would not object to the motion being filed under seal. The Clerk's office told Ms. Schrup they would check with "the Court" regarding how to file the motion. The Clerk's office then filed the motion under seal.

The government filed a response, which was filed under seal at the order of Judge Bruce, in which it argued that the emails were not relevant to the issues on appeal, but not objecting to the motion to supplement the record on appeal. (dkt entry 154). On June 27, 2018, Judge Bruce entered a sealed order (which has since been unsealed as have the original motion and government response), denying the motion to supplement the record on appeal. (dkt entry 155) Judge Bruce found the emails were "irrelevant to matters at issue on appeal" and "any further development of this record should occur in a collateral

proceeding as opposed to direct appeal." *Id*. at 2-3. The Seventh Circuit also denied Ms. Schrup's motion to supplement the record on appeal. (app. dkt entry 39)

On August 14, 2018, Ms. Nixon filed a *pro se* motion for new trial pursuant to Federal Rule of Criminal Procedure 33(b)(1), arguing that Judge Bruce's improper *ex parte* communications with the United States Attorney's office during her trial was newly discovered evidence warranting a new trial. (dkt entry 160) The motion attached the disclosed emails as an exhibit. *Id* at 2. While both the motion and the exhibit were initially publicly accessible on the district court's PACER system, the exhibit containing the emails was sealed" at the direction of chambers." (dkt entry dated 08/15/2018) Judge Bruce ordered Ms. Nixon's *pro se* motion stricken "as being improperly filed, pro se, while Defendant was represented by counsel." *Id*.

On August 16, 2018, Judge Bruce entered an order recusing himself from Ms. Nixon's case. (dkt entry 161) In the order Judge Bruce states: "At the time it was sent, and now, I consider the email exchange to be innocuous and merely a private email conversation with someone entirely uninvolved in this case." *Id*. The case was reassigned to Chief Judge James E. Shadid. *Id*.

On August 17, 2018, Judge Bruce was removed from all criminal cases and all civil cases in which the United States Attorney's office for the Central District of Illinois represents a party. See http://www.pjstar.com/news/20180817/judge-in-aaron-schock-case-removed-from-all-cases-involving-federal-government.

On August 28, 2018, the Seventh Circuit affirmed Ms. Nixon's conviction and sentence. *United States v. Nixon*, 901 F.3d 918 (7th Cir. 2018).

8

On September 24, 2018, Ms. Nixon wrote the Court asking that counsel be appointed in the district court to assist her in filing a motion for a new trial based on Judge Bruce's and the United States Attorney's misconduct. (dkt entry 169) On September 26, 2018, the Court reappointed the Federal Public Defender's Office to represent Ms. Nixon on any "postconviction motion in this Court." (dkt entry dated 09/26/2018).

### III. ADDITIONAL EX PARTE COMMUNICATIONS BETWEEN JUDGE BRUCE AND THE UNITED STATES ATTORNEY'S OFFICE

On September 20, 2018, the Federal Defender's office received additional *ex parte* email communications that occurred between Judge Bruce and employees of the United States Attorney's office in cases in which the Federal Public Defender's office was counsel of record. These emails establish that Judge Bruce has engaged in a pattern and practice of improper *ex parte* communications with the United States Attorney's Office for the Central District of Illinois and further demonstrates Judge Bruce's bias in favor of the United States and against criminal defendants.

A.      *United States v. Dorsey*, No. 14-CR-20026 (C.D. Ill.)

The emails attached as Exhibit B are *ex parte* communications between Paralegal Staci Klayer of the United States Attorney's office (the "Staci" referenced in Judge Bruce's and Ms. Hopps' emails in Ms. Nixon's case) and Judge Bruce concerning a request by Assistant United States Attorney (AUSA) Eugene Miller to have a telephonic status conference continued. The back-and-forth between Ms. Klayer and Judge Bruce ends with Ms. Klayer stating "Yeah dude – you're rockin it. You were made for that position." Though these emails deal with a routine scheduling matter, they represent *ex parte* communications that should have disqualified Judge Bruce under ethics rules from

handling the matter. The Code of Conduct for United States Judges only allows a judge to engage in *ex parte* communication regarding scheduling "when circumstances require it." Canon 3(A)(4)(b). Nothing in Mr. Dorsey's case required Judge Bruce to discuss scheduling matters with the United States Attorney's office *ex parte*. In addition, the casual and fawning tone of the improper *ex parte* communication in this and other cases reveals a bias in favor of the government and a pattern of unethical *ex parte* discussions that Judge Bruce apparently does not recognize as improper.

B.      *United States v. Speed*, No. 14-CR-20056 (C.D. Ill.)

Attached as Exhibit C1, C2 and C3 are groups of *ex parte* emails between Judge Bruce and the United States Attorney's office in *United States v. Speed*, No. 14-CR-20056 (C.D. Ill.). Exhibit C1 is an email exchange that occurred after undersigned counsel filed Mr. Speed's opening brief with the Seventh Circuit. That brief was filed on July 6, 2015, and challenged several of the conditions of supervised release imposed on Mr. Speed. The brief was filed during the time period in which district courts and the Seventh Circuit were grappling with the requirements of *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015). The Federal Defender's office represented the defendants in *Thompson*, and we have actively challenged conditions of supervised release both before and after that case. Mr. Speed's brief asked the Seventh Circuit to vacate Mr. Speed's sentence and remand to Judge Bruce for a full resentencing in accordance with the remedy of *Thompson*.

Less than thirty minutes after the opening brief was electronically filed with the Seventh Circuit, Ms. Klayer emailed Judge Bruce: "The attached brief was filed today. Since we weren't sure if Judge Bruce would receive a copy or even know that it had been

10

filed, we are forwarding a copy to chambers for his review given the issues that were raised on appeal." The next morning Judge Bruce replied to the email stating "Unbelievable. Thanks for the early warning."

Exhibit C2 are two emails sent from Judge Bruce to Assistant United States Attorney Jason Bohm, the prosecutor assigned to Mr. Speed's appeal. One October 28, 2015, Judge Bruce sent an email to Mr. Bohm stating: "Jason, Nice job in US v Armour. Good ammo for your Speed argument also. Top notch. – Colin." The reference to "US v Armour" is to *United States v. Armour*, 804 F.3d 859 (7th Cir. 2015). In *Armour*, the Seventh Circuit rejected a challenge to several conditions of supervised release, one of which was identical to one of the challenged conditions in Mr. Speed's appeal. Thus, Judge Bruce's comment that the decision would be "Good ammo for your Speed argument also." The second email in exhibit C2 is an email from Judge Bruce to AUSA Bohm on January 19, 2016. That email is a forwarding of the electronic notice issued by the Seventh Circuit affirming Judge Bruce's sentence in Mr. Speed's case. Judge Bruce forwarded the electronic notice to AUSA Bohm with the comment: "Well done, sir. Well done."

The email exchanges in exhibits C1 and C2 are not simply *ex parte* communications between Judge Bruce and the United States Attorney's office. They are instead evidence of a concerted and coordinated effort between Judge Bruce and the United States Attorney's office to undermine *Thompson* and to not fairly treat defendants like Mr. Speed who might raise similar objections to conditions of supervised release. Both Judge Bruce and the United States Attorney's office act as if Judge Bruce is still the First Assistant United States Attorney (the position he held immediately before taking the bench). The line AUSA's

11

communicate issues raised in an appeal to their supervisor who then gives them advice on how to prosecute the appeal and praise when the case is won. This is "smoking gun" evidence of Judge Bruce working with prosecutors from the United States Attorney's office against criminal defendants. *Franklin*, 398 F.3d at 960. This is *not* the work of a fair, unbiased judge.

The emails in Exhibit C3 concern the scheduling of Mr. Speed's initial appearance. Normally Magistrate Judge Bernthal conducted initial appearances, but he was in trial, so Judge Bruce may have been called upon to handle the hearing. When this fact became clear, Judge Bruce was included in the email chain. Mr. Speed was being represented by Attorney Lawrence Beaumont, a former AUSA with the Central District and former colleague of Judge Bruce's in the United States Attorney's Office. Once Judge Bruce was included in the email chain, the Judge Bruce emailed "What would be the most inconvenient for Larry?" to which Ms. Klayer responded "Lol! Early in the morning or 1:30 when he's in Chicago in court!!! But if we do that, he's just going to call and cry!"

Undersigned counsel has spoken with Mr. Beaumont about this email and he is of the opinion that Judge Bruce was being sarcastic. Counsel has no reason to believe otherwise. Nevertheless, this email exchange is another example of Judge Bruce casually engaging in *ex parte* discussions of cases with the United States Attorney's Office as if he were still a member of that office.

C. *United States v. Dorsett*, No. 16-CR-20043 (C.D. Ill.)

Mr. Dorsett was in state custody when federal charges were filed against him. Accordingly, a writ of habeas corpus ad prosequendum was needed to bring Mr. Dorsett

into federal custody. Attached as Exhibit D are emails between Judge Bruce and Soni Holmes, a secretary in the United States Attorney's office. Ms. Holmes's email to Judge Bruce states: "It is my understanding I was to pick a date and time and just advise Chambers. I am checking to make sure that November 29 at 10:00 will work for the Judge Bruce [sic]." Judge Bruce responds, "Roger-dodger. GO SONCHETTA!" Again, Judge Bruce was interacting with his former colleagues as if they were current colleagues. In isolation this email exchange is relatively harmless; but it is yet one more example of Judge Bruce engaging in improper *ex parte* communications with the United States Attorney's office further establishing bias in favor of that office and against criminal defendants.

    D.    *United States v. Shannon*, No. 15-CR-20014 (C.D. Ill.)

The Federal Defender's office was appointed to represent Mr. Shannon in the district court after his trial resulted in a guilty verdict. Attached as Exhibit E is a series of emails that originated from the Probation Office to Judges Bruce, Baker, and Long, their law clerks, and Ms. Klayer and AUSA Eugene Miller concerning training dates for the Probation office staff. The email asks the judges to not schedule hearings on the training dates if possible. One of the training dates was September 11, 2017. Judge Bruce replied to all: "Shawn Shannon re-sentencing set for September 11. Nice."[1] A few days later Ms. Klayer replied only to Judge Bruce: "Sounds like the probation officer assigned to this case needs to stay here and work!" Judge Bruce replied only to Ms. Klayer. "Yep. Don't

---

[1] A review of the docket sheet reveals that is was Mr. Shannon's original sentencing set for September 11, 2017, not a resentencing.

think its [sic] moving. . . . . ." The docket sheet reveals the sentencing did occur on September 11, 2017.

These emails are yet another example of Judge Bruce's pattern of improper *ex parte* communication with the United States Attorney's office and a bias in favor of his old office and against criminal defendants.

E.      *United States v. Martinez*, No. 14-CR-20035 (C.D. Ill.)

Mr. Martinez was released on bond. Attached as Exhibit F is an email exchange between the United States Probation office, Judge Bruce, and the United States Attorney's office regarding an allegation that Mr. Martinez violated the conditions of his bond. The probation office asked Judge Bruce to address the alleged violations with Mr. Martinez at an upcoming telephonic status conference. Peter Henderson, the Assistant Federal Public Defender assigned to Mr. Martinez's case, was not copied on the email. Judge Bruce replied to everyone on the email and agreed to handle the alleged violation in the manner recommended by the probation officer. Judge Bruce did not include Mr. Henderson in his reply.

This email exchange is further evidence of Judge Bruce's bias in favor of the government and against criminal defendants. The fact that the probation office included the United States Attorney's office on this email but not defense counsel demonstrates how cases are prosecuted in Urbana. The fact that neither Judge Bruce nor the United States Attorney's office thought to include defense counsel in a discussion of the merits of an alleged bond violation is troubling. And Judge Bruce's willingness to make substantive decisions in a criminal case with notice to the prosecution but not the defense reveals his

14

inability to fairly and impartially preside over criminal cases.

     F.     *United States v. Baker*, No. 16-CR-20065 (C.D. Ill.)

Attached as Exhibit G is a series of emails between Ms. Klayer and Judge Bruce regarding the scheduling of criminal trials and his decision on how to rule on any requests to change scheduled trial dates. According to the emails, the source of the email chain is a telephone call from Judge Bruce to the United States Attorney's office concerning upcoming criminal trials. Judge Bruce had been assigned the case of *United States v. Shock*, No. 16-cr-30061 (C.D. Ill.), involving criminal charges filed against former United States Congressman Aaron Schock, and he had set a trial date of July 10, 2017. Judge Bruce apparently called the United States Attorney's Office on either April 5, or 6, 2017, to inform it that due to the *Schock* trial date, no continuances would be granted in any pending criminal cases. Ms. Klayer's email describes the call as follows:

Katie [Boyle, AUSA] and Brian [Freres, AUSA]:

Judge Bruce called today about the trial you both have scheduled for April, May, and June.

He wants to know if they are going to be definite trials and to let us know that he will NOT continue any of them because of the Shock trial which will be held in July and probably part of August. He said it's either a plea or a trial. Period.

In addition to the trials I am going to list, he wants to know if there are any other cases scheduled for trial during this time period.

| | | | |
|---|---|---|---|
| 4/25/17 | Deon Evans | 16-20027 (Katie) | |
| 5/2/17 | Michael Baker | 16-20065 (Bryan) | |
| 5/23/17 | Emerson Brooks | 16-20012 (Bryan) | |
| 6/29/17 | Roy Collins | 16-20059 (Katie) | |

Please let me know so that I can respond to Judge Bruce as soon as possible.

At some point after the telephone call, Judge Bruce emailed Ms. Klayer with the subject line "and so?". She responded by informing Judge Bruce of the responses she had received from AUSAs Boyle and Freres. Judge Bruce then replied, "Do Bryan and Katie understand that there will be no more continuances in these cases? And did I miss any trials between now and Schock-a-palooza?" Ms. Klayer responded by cutting and pasting the email she had sent to AUSAs Boyle and Freres about Judge Bruce's call to show Judge Bruce that she had in fact made the two aware of his position on motions to continue. Judge Bruce replied to Ms. Klayer, "You are THE BEST!" to which she replied, "You're too kind. ☺"

This email exchange is further evidence of bias in favor of the government. Judge Bruce prejudged the merits of any motion to continue that might have been filed by either party in a number of different criminal cases and communicated his prejudged outcome *ex parte* to the prosecution so it could prepare accordingly without giving the same notice to defense counsel. That is bias.

The emails described above are limited to cases in which the Federal Defender's office was the attorney of record for the defense. In *United States v. Gmoser*, No. 14-CR-20048 (C.D. Ill.), a case in which the Federal Defender's office was not defense counsel, the defendant has filed a motion for new trial based on *ex parte* communications between Judge Bruce and the United States Attorney's office. In that case, Assistant United States Attorney Elly Peirson, who was the senior prosecutor in Ms. Nixon's case, sent an email to Judge Bruce's chambers email account with defense counsel copied, pointing out where on the docket sheet certain trial document such as witness lists, exhibit lists, proposed

16

jury instructions etc., had been filed. *United States v. Gmoser*, No. 14-CR-20048, dkt. entry 309, Ex. A (C.D. Ill.). Judge Bruce responded to the prosecutor only, from his personal government email account, "My bad. You're doing fine. Let's get this thing done." *Id*. This is yet another example of bias in favor of the government and against criminal defendants.

## IV. THE LAW

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal citation omitted). "To prove disqualifying bias, a petitioner must offer either direct evidence or 'a possible temptation so severe that we might presume an actual, substantial incentive to be biased.'" *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005) (*quoting Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1380 (7th Cir.1994) (en banc)). "Absent a 'smoking gun,' a petitioner may rely on circumstantial evidence to prove the necessary bias." *Id*.

A trial before a biased judge is structural error. *Tumey v. Ohio*, 273 U.S. 510, 535 (1927) ("No matter what the evidence against [the defendant], he had the right to have an impartial judge."); *Neder v. United States*, 527 U.S. 1, 8 (1999) (including "biased trial judge" among very limited class of errors constituting structural error). Structural errors constitute a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Structural errors "are so intrinsically harmful as to require automatic reversal (*i.e.*, "affect substantial rights") without regard to their effect on the outcome." *Neder*, 527 U.S. at 7. In

other words, structural errors are not subject to harmless error analysis. *Id.*

Under Federal Rule of Criminal Procedure 33 "the court may vacate any judgment and grant a new trial if the interest of justice so requires." New trial motions based upon newly discovered evidence must be brought within 3 years after the verdict or finding of guilty. Rule 33(b)(1). "[A] motion for a new trial based on newly discovered evidence that demonstrates constitutional or statutory error may indeed be brought under Rule 33 and should be granted 'if the interest of justice so requires.'" *United States v. O'Malley*, 833 F.3d 810, 815 (7th Cir. 2016).[2]

Ordinarily, the interest of justice requires a new trial if the defendant can prove the following four-part test: that the newly discovered evidence "(1) was discovered after trial, (2) could not have been discovered sooner through the exercise of due diligence, (3) is material and not merely impeaching or cumulative, and (4) probably would have led to acquittal." *United States v. O'Malley*, 833 F.3d 810, 813 (7th Cir. 2016) (citing *United States v. Westmoreland*, 712 F.3d 1066, 1072 (7th Cir. 2013); *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012); *United States v. Reyes*, 542 F.3d 588, 595 (7th Cir. 2008)). But newly discovered evidence that was in the prosecutor's possession and not given to the defense is a different story.

> [T]he fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial. For that reason the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence would have resulted in acquittal. If the standard applied to the usual motion for a new trial based on newly discovered evidence where the same when the evidence was in the State's

---

[2] Ms. Nixon cannot raise her claim in a motion to vacate filed pursuant to 28 U.S.C. § 2255 as she has finished serving her sentence and is no longer "in custody."

possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice.

*United States v. Agurs*, 427 U.S. 97, 111 & n.19 (1976); *accord United States v. Turner*, 490 F. Supp. 583, 598 (E.D. Mich. 1979), *aff'd mem.*, 633 F.2d 219 (6th Cir. 1980) ("[M]aking out the traditional elements of a new trial based on newly discovered evidence is not necessary … if the alleged error is of constitutional nature, or . . . if the motion is based upon the mere allegation of governmental misconduct."); *see also* Paul Mogin, *Using New Evidence of a Constitutional Violation to Get a New Trial*, Champion, Sept–Oct 2003, at 26, 27 (discussing in detail the different standard for Rule 33(b)(1) motions alleging constitutional errors, as compared to ones alleging "simply that, at a retrial in which the new evidence was received, the defendant likely would be acquitted").

Not requiring a showing that the newly evidence would likely lead to an acquittal is not extraordinary as "[a] theory that newly discovered evidence establishes the defendant's innocence is one, not the only, theory that would support relief under Rule 33." *O'Malley*, 833 F.3d at 814. After all, Rule 33 does not say a new trial can only be granted if the defendant shows she will be acquitted at a new trial. The Rule says a new trial should be granted "if the interest of justice so requires." The Supreme Court has held that the interest of justice *always* requires a new trial when the trial judge was biased. *Tumey*, 273 U.S. at 535; *Neder*, 527 U.S. at 7. And, that standard does not change depending on whether a case is on direct or collateral review. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993) (noting structural error always requires new trial while trial errors subject to harmless error review have more stringent standard of review on collateral review).

19

The Supreme Court has explained why application of harmless-error review is inappropriate when the defendant's trial was before a biased judge.

> The State of course must provide a trial before an impartial judge with counsel to help the accused defend against the State's charge. Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair. Harmless-error analysis thus presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury.

*Rose v. Clark*, 478 U.S. 570, 577-78 (1986) (internal citations omitted) (footnote omitted). Accordingly, newly discovered evidence that establishes the trial judge was biased, especially when the new evidence was in the government's possession during the trial but was not disclosed, automatically requires a new trial. *See United States v. Bowen*, 799 F.3d 336, 349 (5th Cir. 2015) ("Newly discovered evidence need not relate only to guilt or innocence, but may be relevant to any controlling issue of law. C. Wright & S. Welling, 3 Fed. Practice & Proc. § 588, at 448 (2011)").

## V. Analysis

*Judge Bruce's bias*

The fact and content of Judge Bruce's multiple *ex parte* communications with the United States Attorney's office for the Central District of Illinois in ongoing criminal cases establish his bias in favor of the government and against criminal defendants. This case provides the most extreme example. The content of Judge Bruce's emails to Ms. Hopps regarding Ms. Nixon's trial reveals a judge who has determined the defendant is guilty and should be convicted, is frustrated and angry that Ms. Nixon might not be convicted, and is willing to share *with the prosecutor's office* how the prosecutors handling the case

could improve their cross-examination to help ensure a conviction. The interests of justice require a new trial—this time, before an impartial judge.

Particularly jarring is the disparity between Judge Bruce's admonishment to the jury on Friday afternoon to keep an open mind and not to discuss the case with anyone, and his own conduct in failing to keep an open mind and discussing the case with Ms. Hopps. Judge Bruce did *everything* he told the jury not to do. He did not keep an open mind. He discussed the case with someone else. And he did it *with the prosecution*. It is impossible to overstate how improper Judge Bruce's actions were. As noted by an attorney commenting on the emails in the *Illinois Times*, "this is conduct by a federal judge that is almost hard to fathom. It's shocking – I think anybody would tell you that. This is a serious transgression." Bruce Rushton, *Federal judge engaged in ex parte talk*, Illinois Times, Aug. 16, 2018 (available at https://illinoistimes.com/article-20331-federal-judge-engaged-in-ex-parte-talk.html).

While the emails in Ms. Nixon's case are sufficient in themselves to demonstrate Judge Bruce's bias, the emails in other cases provide further evidence of Judge Bruce's pro-government bias. The emails in the *Speed* case show the United States Attorney's office and Judge Bruce collaborating to litigate Mr. Speed's appeal. The United States Attorney's office gives Judge Bruce a "heads up" regarding the issues raised and then Judge Bruce provides advice, directly to the AUSA handling the appeal, on how to litigate the appeal, followed by praise for winning the appeal. As in Ms. Nixon's case, Judge Bruce's emails reveal a profound bias in favor of the government and against the defendant. The *Speed* emails predate Ms. Nixon's trial, showing Judge Bruce's bias in

favor of the government and against defendants existed long before it was revealed through his emails in this case.

The *ex parte* emails in the *Martinez* case show Judge Bruce, the United States Attorney's office, and the probation office all working together to decide how to litigate an alleged bond violation, with no notice to defense counsel. The fact that neither Judge Bruce, the prosecutor, nor the probation office thought there was anything improper about making substantive decisions in a criminal case without the involvement of the defendant or defense counsel demonstrates the level of pro-government bias permeating criminal cases assigned to Judge Bruce.

The emails in the *Baker* case show Judge Bruce speaking directly to the United States Attorney's office, *ex parte*, about how he will rule on the merits of motions that may be filed so the prosecution could prepare accordingly. These are not the actions of a neutral arbiter.

Judge Bruce's emails in these cases are "smoking guns" proving bias in favor of the government and against criminal defendants. *Franklin*, 398 F.3d at 960. Yet even they are not the entire universe of emails between Judge Bruce and the United States Attorney's office. Undersigned counsel (Mr. Patton) has a pending Freedom of Information Act (FOIA) request for *all* written communication between Judge Bruce and the United States Attorney's office for the Central District of Illinois from the time Judge Bruce took the bench on October 8, 2013. On October 2, 2018, counsel was informed by the Public Liaison at the Executive Office for United States Attorneys ("EOUSA")assigned to the FOIA request that there are responsive documents. Undersigned was told to call back "in a

couple of weeks" to get further information on when the FOIA response would be provided. On October 22, 2018, counsel was told by staff at the EOUSA that they are still processing the request but may start making interim disclosures in the near future. Ms. Nixon will supplement her motion if more documents showing bias are received.

*The United States Attorney's Office's misconduct*

The government's misconduct also warrants the grant of a new trial. Illinois Rule of Professional Conduct 3.5(b) states "A lawyer shall not communicate *ex parte* with [a judge] during the proceeding unless authorized to do so by law or court order." Rule 8.4(f) states it is professional misconduct for a lawyer to "knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." Canon 3(A)(4) of the Code of Conduct for United States Judges, which applies to United States District Judges, prohibits a judge from "initiat[ing], permit[ing], or consider[ing] ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers." It continues: "If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." All of these rules were violated in Ms. Nixon's case. And, no one in the United States Attorney's office reported this misconduct at the time it occurred.

While the emails in Ms. Nixon's case and in the other cases (with the exception of *Gmoser* and *Speed*) were exchanged between Judge Bruce and paralegals in the United States Attorney's office, that does not avoid the consequences of the Rules of Professional

Conduct. Rule 5.3 provides:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:

>> (a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer; [and]

>> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer.

At a minimum, the lawyers in the United States Attorney's office who have "comparable managerial authority" to partners in a law firm have failed to put in place "measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer." The lawyers in the United States Attorney's office with direct supervisory authority over Ms. Hopps and Ms. Klayer have utterly failed to ensure the paralegals' "conduct is compatible with the professional obligations of the lawyer."

In fact, Ms. Klayer's email to Judge Bruce in the *Speed* case, giving him what he described as a "heads up" on the issues raised, appears to have been sent at the direction of a lawyer. Rule 5.3(c)(1) states that "a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if: the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved."

The two emails from Judge Bruce directly to AUSA Bohm regarding the *Speed* appeal and Judge Bruce's email directly to AUSA Peirson in *Gmoser* do not have the filter

24

of a paralegal. While at this point there is no evidence AUSA Bohm nor AUSA Peirson responded to Judge Bruce's *ex parte* emails, it does not appear they took any action to report Judge Bruce's improper communications to opposing counsel, their supervisors or any other appropriate authority.

Had the government timely disclosed its misconduct, Ms. Nixon would have successfully moved for a mistrial. Additionally, Ms. Nixon would have been successfully in having Judge Bruce removed from presiding over her new trial. Ms. Nixon was deprived of this result by the government's successful cover up of its misconduct until after the trial was completed. By continuing to conceal its misconduct until after Ms. Nixon's appellate briefs had been filed and the case argued to the Seventh Circuit, the government also prevented Ms. Nixon from raising the issue on appeal.

When Ms. Nixon's appellate counsel moved to have the emails made part of the record on appeal so she could try to raise an argument based on the emails, Judge Bruce denied the motion because the emails were "irrelevant to matters at issue on appeal." (dkt entry 155) Of course the emails were not relevant to any argument made on appeal: Judge Bruce and the government hid the emails from Ms. Nixon until after the appellate briefs had been written. Ms. Nixon's appellate counsel could hardly raise on issue on appeal that the government and Judge Bruce had successfully kept hidden.

The government's initial misconduct in engaging in *ex parte* communication with Judge Bruce during Ms. Nixon's trial deprived her of her right to a fair trial before an unbiased judge. The government's further misconduct in hiding the *ex parte* communications made it impossible for Ms. Nixon to obtain relief before her trial ended

25

and on appeal. This motion is Ms. Nixon's first opportunity to have an unbiased court consider the government's and Judge Bruce's misconduct. It is finally time for Ms. Nixon to receive the justice that up until this point she has been denied. The interests of justice require a new trial. Fed. R. Crim. P. 33(a).

If the Court does not believe the existence and contents of Judge Bruce's emails and the government's misconduct in hiding the emails from Ms. Nixon is in and of itself sufficient to grant a new trial, it should hold an evidentiary hearing to determine how the newly discovered evidence of judicial and prosecutorial misconduct harmed Ms. Nixon's constitutional rights. *See United States v. Disston*, 582 F.2d 1108, 1112 (7th Cir. 1978) (remanding for an evidentiary hearing where a new trial motion could not be "properly resolved without a more complete development of the facts" as to the harmfulness of the prosecutor's misconduct); *see also Turner*, 490 F. Supp. at 600 (explaining that while the Court has discretion to grant an evidentiary hearing, "there are limits to this discretion, especially when Governmental misconduct is alleged").

An evidentiary hearing might reveal that the emails contained within Exhibit A do not represent the full extent of the judicial and prosecutorial misconduct that occurred in the case. Discovery might reveal that others in the United States Attorney's office knew, or should have known, about the email exchange before the trial's conclusion, but failed to disclose the emails. At a minimum, members of the United States Attorney's office will have to explain, under oath and from the witness stand, how the emails came to light.

Testimony from both Ms. Hopps and the government trial attorneys might reveal that Ms. Hopps shared Judge Bruce's comments with the trial attorneys, and they altered

their trial strategy after learning of Judge Bruce's suggestions. First Assistant Hansen's claim in his cover letter that the United States Attorney's office has "no information suggesting that this exchange was shared or made known to the trial team" is no answer to these questions. A party that engages in misconduct is not entitled to avoid an evidentiary hearing about that misconduct by making a self-serving determination that it has not engaged in any further misconduct.

Additionally, this Court should dismiss Ms. Nixon's indictment if the Court believes that the governmental misconduct tainting Ms. Nixon's trial "was so egregious as to merit dismissal of the indictment." *Disston*, 582 F.2d at 1112. While this remedy "is, of course, an extraordinary one which should be reserved for only the most serious misconduct," id., Judge Bruce's misconduct was undoubtedly egregious in Ms. Nixon's case given it prompted his removal from all criminal cases within the district. *See* Michael Tarm, *US Judge Off Corruption, Kidnapping Cases After Emails*, Wash. Times (Aug. 21, 2018), https://www.washingtontimes.com/news/2018/aug/21/us-judge-off-corruption-kidnapping-casesafter-ema/ (mentioning, with respect to Judge Bruce's conduct, that it "is an understatement to say that this is outrageous").

WHEREFORE, Ms. Nixon respectfully requests that this Court grant her a new trial based on the newly discovered evidence contained in Exhibit A and attached to this motion, or alternatively, that this Court either hold an evidentiary hearing prior to deciding this motion or that it dismiss the indictment.

BY:   <u>s/ Peter W. Henderson</u>              <u>s/ Thomas W. Patton</u>
       Assistant Federal Public Defender      Federal Public Defender
       300 West Main Street                   401 Main Street, Suite 1500
       Urbana, Illinois 61801                 Peoria, IL 61602
       Phone: (217) 373-0666                  Phone: (309) 671-7891
       Facsimile: (217) 373-0667              Facsimile: (309) 671-7898
       Email: <u>Peter_Henderson@fd.org</u>         Email: <u>thomas_patton@fd.org</u>

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Assistant United States Attorney Elly Pierson. A copy of the foregoing was also mailed to the defendant.

<u>s/ Thomas W. Patton</u>
THOMAS W. PATTON
Attorney for Defendant
Federal Public Defender
PA ID No. 88653
401 Main Street, Suite 1500
Peoria, Illinois 61602
Phone: 309/671-7891
Fax: (309) 671-7898
E-mail: Thomas_Patton@fd.org