# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cr-20057-JES-JEH |
| | ) | |
| SARAH NIXON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on the United States' Appeal (Doc. 205) of Magistrate Judge Hawley's December 17, 2019 decision requiring the United States to eliminate certain redactions in documents disclosed to Defendant, the United States' Memorandum (Doc. 206) in Support, and Defendant's Memorandum (Doc. 207) in Opposition. For the reasons set forth below, Magistrate Judge Hawley's December 17, 2019 decision is AFFIRMED.

### BACKGROUND

**(A) TRIAL**

Sarah Nixon was convicted following a jury trial before District Judge Colin S. Bruce for international parental kidnapping, in violation of 18 U.S.C. § 1204. She was subsequently sentenced to 26 months in prison. Her conviction was affirmed on direct appeal. *United States v. Nixon*, 901 F.3d 918 (7th Cir. Aug. 28, 2018). While her appeal was pending before the Seventh Circuit, Nixon's appellate counsel filed a motion in the district court to supplement the record on appeal. Doc. 153. After Judge Bruce denied the motion, Nixon's appellate counsel renewed her motion to supplement the record on appeal before the Seventh Circuit, which was also denied. The documents appellate counsel sought to supplement the record on appeal with are central to Nixon's postconviction proceedings and are discussed below.

1

Following the conclusion of her direct appeal, the Court appointed the Federal Defender to represent Nixon in connection with anticipated postconviction proceedings. *See* Sept. 26, 2018 Text Order. On October 25, 2018, Nixon filed a Motion for New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Doc. 173. Therein, she asserted Judge Bruce had a disqualifying bias against her and in favor of the United States.[1] The basis for the motion stemmed from ex parte communications between Judge Bruce and individuals employed by the United States Attorney's Office ("USAO" or "the Office") in this District. Those communications were also the subject of complaints before the Judicial Council of the Seventh Circuit ("the Council"). *See In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019). The following factual background is culled from the Council's report.

**(B) POSTCONVICTION PROCEEDINGS**

Judge Bruce's ex parte communications with the Office became public in August 2018, when the Illinois Times published an article titled "Federal judge engaged in ex parte talk." That article reported on emails exchanged between Judge Bruce and United States Attorney's Office paralegal Lisa Hopps during Nixon's December 2016 trial, over which Judge Bruce presided. Hopps did not work on the *Nixon* trial, but the two began emailing about it after Hopps sent Judge Bruce an email complaining about his absence at former United States Attorney ("USA") Jim Lewis's going away party. Judge Bruce responded that he missed the party because of the *Nixon* trial. Judge Bruce went on to criticize one of the prosecutors in *Nixon* as "entirely inexperienced" and said the prosecutor was, among other things, "repeating the bullshit" to which Nixon testified, and turning a "slam-dunk" case into a "60-40" one for Ms. Nixon.

---

[1] Nixon later supplemented her Motion for New Trial to add an appearance of bias claim under 28 U.S.C. § 455(a). *See* Doc. 204.

Following the Illinois Times report, Chief Circuit Judge Wood (and later, Federal Public Defender Patton) filed a complaint with the Council, and the undersigned, in my capacity as Chief District Judge,[2] removed Judge Bruce from all cases involving the United States. The complaints were resolved on May 14, 2019, when the Council issued an order admonishing Judge Bruce, continuing his removal from all cases involving the United States until September 1, 2019, and requiring him to review certain judicial training materials. The Council concluded its order by indicating it has not identified any evidence suggesting Judge Bruce's ex parte contact or relationship with the U.S. Attorney's Office in the Central District of Illinois impacted his decision making in any case. *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067, at 1.

The *Nixon*-related emails came to light as a result of Hopps, in late 2017, sharing them with Assistant U.S. Attorney ("AUSA") Timothy Bass, after Judge Bruce issued an order finding that Bass had misled the court in *United States v. Schock*, No. 16-cr-30061. AUSA Bass later notified certain Office personnel in the Urbana branch of the emails with Hopps. Around May 2018, Elly Peirson, an AUSA on the *Nixon* trial, contacted Hopps asking for the emails. Peirson then shared the emails with USAO leadership—John Childress, Patrick Hansen, and Greggory Walters (an AUSA and the Office's Professional Responsibility and Ethics Advisor). Hansen and Walters subsequently shared the emails with the Department of Justice ("DOJ"). The Office then made the decision (1) to disclose the emails to Nixon's counsel and (2) to conduct a review to determine what other ex parte communications may exist and whether additional disclosures were necessary.

---

[2] My tenure as Chief District Judge concluded on March 12, 2019. District Judge Sara L. Darrow is the current Chief Judge in this District.

The USAO's disclosures prompted Nixon's Motion for New Trial. Doc. 173. In its response to the motion, the United States included extensive excerpts of Judge Bruce's ex parte emails. Doc. 181. Additionally, the United States disclosed to the Court and the Council several additional ex parte communications between Judge Bruce and the Office relating to other cases. However, the United States provided Nixon with redacted versions of these documents, asserting the work product doctrine and other privileges precluded disclosure of certain materials. Docs. 192–96. This Court referred the discovery dispute to Magistrate Judge Hawley, who entered an oral order on Nixon's Motion (Doc. 197) to Unredact on December 17, 2019. Magistrate Judge Hawley's rulings on Nixon's Motion to Unredact are the subject of this appeal.

**(C) DOCUMENTS IN DISPUTE**

In addition to the ex parte emails between the USAO and Judge Bruce, the parties have identified the following documents relevant to this appeal. *See* Doc. 206, at 10; Doc. 207, at 2.

### 1. Bass/OIG Emails (Doc. 201, Pages 1-279 [Attachment 1])

AUSA Bass and the Office of the Inspector General ("OIG") exchanged a series of emails in December 2017 and January 2018, in which Bass asked OIG to investigate alleged wrongdoing by certain personnel at the U.S. Attorney's office in connection with *United States v. Aaron J. Schock*, No. 16-cr-30061 (C.D. Ill.), the prosecution of a former U.S. congressman for various offenses in connection with the misuse of public and campaign funds. The exchange included several attachments, including (1) communications among AUSA Bass; Patrick Hansen, then Acting United States Attorney; John Childress, then Criminal Chief; and other personnel in the Office, regarding the handling of *Schock* and the drafting of filings for that case; (2) transcripts of grand jury proceedings in *Schock*; (3) a performance appraisal for AUSA Bass

covering January through December 2016; and (4) several documents filed in the *Schock* case. These documents total 279 pages.

### 2. Bass/PRAO Email (Doc. 201, Pages 280-296 [Attachment 2])

AUSA Bass forwarded some of the emails described immediately above (Pages 30-46) to the DOJ's Professional Responsibility Advisory Office ("PRAO") in December 2017. Thus, except for the email header reflecting the forward to PRAO, these documents are a duplicate of part of the Tim Bass/OIG Emails. These documents total 17 pages.

### 3. Bass/Peirson Emails (Doc. 201, Pages 297-304 [Attachment 3])

AUSA Bass, who handled the *Schock* case, and AUSA Elly Peirson, who handled this action, exchanged emails in May 2018 in which they discussed what to do about a December 2016 email exchange between Judge Bruce and Hopps. The United States has disclosed the Bruce/Hopps exchange itself to Nixon without redaction (except for a phone number). The Bass/Peirson Emails (including the Bruce/Hopps exchange) total eight pages.

### 4. Lisa Hopps Memorandum to EOUSA (Doc. 201, Pages 305-310 [Attachment 4])

Hopps sent a memorandum to Norman Wong, Principal Deputy Director of the Executive Office for United States Attorneys ("EOUSA"), in August 2018. The purpose of Ms. Hopps's communication was to ask EOUSA and the Department of Justice to take certain action regarding the USAO and *Schock*. This document is six pages long.

### 5. Email Summarizing Judge's Feedback on AUSA Performance (Doc. 201, Pages 3721-3722 [Attachment 5])

Eugene Miller, a supervisory AUSA, sent an email to himself in April 2016, summarizing and recording Judge Bruce's oral feedback regarding the performance of another AUSA in the office. The Judge provided feedback regarding that AUSA's work in general, across various

cases. Although the email mentions two specific cases, it does not mention this case, *United States v. Nixon*. This document is two pages long.[3]

**LEGAL STANDARD**

**(A) APPEALS OF NONDISPOSITIVE DECISIONS TO DISTRICT COURT**

Title 28 of the United States Code, Section 636, provides:

> **(b)(1)** Notwithstanding any provision of law to the contrary--
> **(A)** a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court …. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A). Appeals to the district court from a magistrate judge's order under § 636(b)(1)(A) are reviewed for clear error. *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 594–95 (7th Cir. 2006) (under the Federal Rules of Civil Procedure, "when parties object to a magistrate judge's order, district judges are to review nondispositive decisions for clear error and dispositive rulings de novo").

**(B) STANDARD FOR ESTABLISHING DISQUALIFYING BIAS OR APPEARANCE OF BIAS**

"The Due Process Clause guarantees litigants an impartial judge, reflecting the principle that 'no man is permitted to try cases where he has an interest in the outcome.' " *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005) (quoting *In re Murchison,* 349 U.S. 133, 136 (1955)). In order to establish a judge's disqualifying bias, a litigant "must offer either direct evidence or 'a possible temptation so severe that we might presume an actual, substantial incentive to be biased.' " *Franklin*, 398 F.3d at 959 (quoting *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1375 (7th Cir.1994) (*en banc*)). Similarly, when "determining whether a

---

[3] Magistrate Judge Hawley did not order any portion of this document unredacted. *See* Doc. 206-1, at 21. Thus, it appears the inclusion of this document in the United States' brief was in error. Indeed, the United States' brief before this Court is mostly a copy-and-paste job of its brief before Judge Hawley. *Cf.* Doc. 202. Because this document is not at issue in this appeal, the Court does not discuss it further.

judgment should be vacated for a violation of [28 U.S.C.] § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988); *see also United States v. Atwood*, 941 F.3d 883, 885 (7th Cir. 2019).

**(C) ASSERTING PRIVILEGE**

### 1. The Work Product Doctrine

The purpose of the work product privilege "is to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006). "Work-product protection applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (internal quotations omitted). In order to overcome the work product privilege, a party must make a "showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.* at 949–50 (citing Fed. R. Civ. P. 26(b)(3)).

### 2. Attorney-Client Privilege

"The attorney-client privilege protects communications made in confidence by a client … to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E.*, 600 F.3d at 618. When analyzing whether a communication falls within the protection of the attorney-client privilege, the Court considers: "(1) whether legal advice of any kind was sought

from a professional legal adviser in his capacity as such; and (2) whether the communication was related to that purpose and made in confidence by the client." *Id*. (internal quotations omitted).

### 3. Deliberative Process Privilege

The deliberative process privilege covers communications that are (1) pre-decisional and (2) deliberative. *Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 463 (D.C. Cir. 2014) (citing *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 151 (D.C. Cir. 2006)). Pre-decisional communications must have occurred before any final agency decision on the relevant matter. *Id.* Deliberative communications are communications "intended to facilitate or assist development of the agency's final position on the relevant issue." *Id*. The deliberative process privilege may be overcome upon a sufficient showing of a particularized need that outweighs the reasons for confidentiality. *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993).

DISCUSSION

### (A) ANALYSIS OF MAGISTRATE JUDGE HAWLEY'S RULING

On December 17, 2019, Magistrate Judge Hawley issued a ruling regarding the five sets of documents identified and described above. *See generally* Doc. 206-1. From the 312 pages of documents at issue, Magistrate Judge Hawley ordered nine specific unredactions. Judge Hawley prefaced his analysis of the redactions at issue with the following comment:

> Okay… So I've gone through several times this group of exhibits which has been submitted to me; and in figuring out how to articulate my ruling to you all and the basis, by way of background, I have first reviewed all of the information with an eye towards relevance. Okay? So anything that is not relevant, I have allowed it to be redacted. And when I say "relevant," the claim in this case -- or that's before the Court is whether or not Ms. Nixon is entitled to a new trial based on either actual or the appearance of bias on the part of Judge Bruce or prosecutorial misconduct as it relates to their conduct in the Nixon case. So any information contained in these materials that's redacted which would tend to show bias in general by Judge Bruce or a pro-government attitude or ex parte communications with them would meet the relevant standard, as well as any prosecutorial actions in the Nixon case that would be in these materials as well. So that's sort of the guidepost I used for

relevance. If there's information that I found to be relevant that was proposed to be redacted by the government, then I considered whether or not any other of the asserted bases for the redaction would apply.

So having gone through that process and in articulating my ruling today, what I'm going to do is articulate to you those portions that I believe should not be redacted; and everything else that I don't address is, I believe, is appropriately redacted based solely on relevance. So anything that I am not addressing that has been redacted is appropriately redacted because it has no bearing, in my opinion, on any of the issues that relate to the bases for why the defendant is arguing for a new trial. So that's the general ruling as it relates to everything that I'm not addressing now. So there are eight -- no, nine general -- there are nine documents that I believe should be unredacted in some portion, which I'm going to address with you; and then they appear several times -- some of these documents appear several times in these materials, and I will give you the locations of where each, each instance where the document appears. So there are multiple instances of things that need to be unredacted, but they're nine separate documents.

Doc. 206-1, at 5–7. The Court will now address each of the nine specific unredactions ordered by Judge Hawley.

### Redaction 1: Tim Bass/OIG Emails (Doc. 201-1, at 4)

In December 2017 and January 2018, AUSA Bass exchanged a series of emails with OIG in which he asked OIG to investigate alleged wrongdoing by specific USAO attorneys in connection with the *Schock* case. In ruling on Nixon's motion, Magistrate Judge Hawley stated:

Okay. So that communication, I believe there is -- on the following page -- this is attachment 1, page 4. And this is all redacted in the defendant's; but for the benefit of the government so they know what I'm referring to, on that page -- that's attachment 1, page 4 -- the third full paragraph, there is a portion of that that I believe is directly relevant to the issue that's related to the basis for the motion. And that sentence is, begins with -- the first full sentence is appropriately redacted. What should be unredacted begins with "I," the second sentence which begins with "I," through the bod-- through the remainder of that paragraph which ends with the word "ongoing." I believe that portion needs to be unredacted as it relates to, directly to the bases for which Ms. Nixon is arguing for her Motion for a New Trial….

I do not believe that there is any overriding privilege based on the information here that would in any way reveal any work product on pending litigation or any communications related to ongoing investigations; and I think even if there were that the defendant's need for this and its relevance would outweigh that. And that's going to be the case for pretty much all of my rulings on these.

Doc. 206-1, at 8–9. In order to provide a meaningful analysis of Magistrate Judge Hawley's ruling, the Court believes it necessary in this instance to refer with particularity to the statement at issue.[4] The specific passage Judge Hawley ordered unredacted reads:

> I respectfully submit that there are reasonable grounds for OIG to investigate whether Mr. Hansen and Mr. Childress and Judge Colin Bruce (the presiding judge in the *Schock* matter) engaged in a concerted effort … to obstruct, undermine, and sabotage an ongoing high-profile criminal case of national significance; to wrongfully obstruct, undermine, discredit, and cause my removal as the lead attorney in the *Schock* prosecution; to provide false and incomplete information to the Office of the Deputy Attorney General (ODAG) and to the U.S. district court; and to thwart and corrupt the U.S. Attorney selection process, which is also ongoing.

Doc. 201-1, at 4.

## Analysis

The United States' brief on appeal largely parrots its response to Defendant's Motion to Unredact. *Cf.* Docs. 206, 202. Therein, the United States again makes blanket assertions of privilege—work product, grand jury secrecy, the Privacy Act, personal privacy and security—that appear directed to the entirety of the 279-page document, rather than the single discrete half-paragraph which Judge Hawley ordered unredacted and which is the subject of this appeal. Doc. 206, at 29–31. The specific passage Judge Hawley ordered unredacted is AUSA Bass's statement to OIG requesting an investigation into a perceived conspiracy between USAO attorneys and Judge Bruce to sabotage the *Schock* case. Doc. 201-1, at 4.

The United States, as the party seeking to bar disclosure to Defendant, has the burden of "establishing the existence of the privilege as well as its applicability in the particular situation." *Scott v. City of Peoria*, 280 F.R.D. 419, 421–22 (C.D. Ill. 2011) (citing *Bank of America v.*

---

[4] For further discussion on the Court's rationale for referencing in this opinion some of the specific communications at issue, see subheading (B), "Sealing," *infra* at 22–23.

*Veluchamy*, 643 F.3d 185 (7th Cir. 2011)). "Blanket claims of privilege are not acceptable." *Id.* (citing *Holifield v. U.S.*, 909 F.2d 201, 204 (7th Cir. 1990)). Yet that is exactly what the United States has done here. Because the United States fails to explain to this Court why any asserted privilege applies to preclude the production of the portion of Bass's statement to OIG that Judge Hawley ordered unredacted, it has failed by a wide margin to establish any error on Magistrate Judge Hawley's part—let alone clear error. In fact, this conclusion applies equally to each of the redactions at issue in this appeal *See infra*.

In addition to assertions of privilege, the United States also argues that "[m]ost of the information in these emails is irrelevant to Nixon's Motion for New Trial because it relates to other litigation and does not refer to any communications between Judge Colin Bruce and the U.S. Attorney's office." Doc. 206, at 30. At issue in Nixon's Motion for New Trial is whether Judge Bruce was actually biased and/or appeared to be biased against her and in favor of the United States. The United States articulates the following standard for an actual bias claim: "Where the defendant seeks a new trial based on an allegation that the presiding judge was actually or presumptively biased, the defense 'must offer either direct evidence or a possible temptation so severe that [the appellate court] might presume an actual, substantial incentive to be biased.' " Doc. 206, at 16 (quoting *Franklin v. McCaughtry*, 398 F.3d 955, 960 (7th Cir. 2005)). Here, AUSA Bass's assertion that the USAO was in cahoots with Judge Bruce to sabotage the *Schock* case, even if fantastic, is relevant indirect evidence of Judge Bruce's alleged bias—"it has [a] tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). Moreover, the passage Judge Hawley ordered unredacted provides crucial context to varying relationships between individuals in USAO and Judge Bruce. In other words, the Court anticipates Nixon's claim of bias is not simply that Judge Bruce was

*always* biased in favor of the United States; rather, it is likely Nixon will argue Judge Bruce was

biased in favor of *certain* USAO employees (and perhaps biased *against* other USAO

employees). A detailed understanding of those varying relationships will thus be necessary when

considering the merits of Nixon's Motion for New Trial. For these reasons, the Court affirms

Magistrate Judge Hawley's ruling with respect to this redaction.

### Redaction 2: Bass/OIG Emails (Doc. 201-3, at 10–12)

Next, Judge Hawley ordered unredacted a portion of another email communication

between AUSA Bass and the OIG.

> Okay. The next document is document number, which I've referred to as document
> number 2. This is a document which first appears -- and I believe it's the only time
> it appears in these materials -- as attachment number 1, page 30. This is a
> communication, as you will see from the unredacted portions already, that is from
> Tim Bass to OIG. This document, with the exception of the name of the OIG person
> to whom it is addressed and the last paragraph, the remainder of this document --
> and much of it is already unredacted; but the other portions of this document, with
> the exception of the name, again, of the recipient and the last paragraph, I do find
> is relevant to the defendant's claim in this case and is not outweighed by any other
> privilege. To my knowledge, this is the only place that this document appears in the
> materials that were submitted to me.

Doc. 206-1, at 9–10.

### Analysis

The bulk of the material Judge Hawley ordered unredacted in this document is AUSA

Bass's reassertion of a conspiracy between the USAO and Judge Bruce to sabotage the *Schock*

case. Doc. 201-3, at 10. Again, the United States fails to explain to this Court why any asserted

privilege applies to preclude the production of the portion of Bass's statement to OIG that Judge

Hawley ordered unredacted. The other discrete passages Judge Hawley ordered unredacted are

passing references to "the *Schock* matter." *Id.* at 10–11. These references provide necessary

context for the communications between the USAO and Judge Bruce. For these reasons, the

Court affirms Magistrate Judge Hawley's ruling with respect to this redaction.

### Redaction 3: Bass/OIG Emails (Doc. 201-3, at 12 to Doc. 201-4, at 5)

Judge Hawley ordered unredacted the following portions of the same email

communication between AUSA Bass and the OIG:

> Okay. What I'm referring to as number 3 is, first appears on attachment number 1, page 32. This is the same page where the last paragraph of the last one appeared. This is -- if you look at the middle of the page at the unredacted portions, there is an email communication from Tim Bass to OIG. That is dated December 6, 2017, 5:48 p.m. For this document, on page -- attachment 1, page 35, the very first sentence of the first full paragraph on that page -- which begins with "in" and ends with "ground" -- that single sentence, I believe, is appropriately unredacted. The remainder of that paragraph contains what I believe to be irrelevant information. And then beginning on the next full paragraph, which starts with the word -- well, there's an unredacted part in parentheses which states "and during the following time period." The portion of that sentence before that and after for the remainder of that paragraph, I believe, should be unredacted for the reasons that I previously stated. So that is, essentially, that entire paragraph. So we've got the first sentence of the previous paragraph only, then the entire next paragraph, and then finally in the, the very last sentence of the next-to-last paragraph, which is on page 37. The sentence which begins with "Judge" and ends with "order," I believe, should also be unredacted.

Doc. 206-1, at 10–11.

### Analysis

The first redaction Judge Hawley ordered removed set forth the date a motion was filed

in the *Schock* case. Doc. 201-4, at 2. The second redaction Judge Hawley ordered removed

begins with "[s]everal weeks later … Judge Bruce entered an order". *Id*. Thereafter, AUSA Bass

goes on to complain about Judge Bruce's order. *Id*. at 2–3. The United States does not attempt to

redact the portion of that passage which states "and during and following the time period during

which Mr. Hansen and Mr. Childress had repeated ex parte contact with Judge Bruce." *Id*. at 2. In

order for the reader to comprehend that passage, it must know the time period to which Bass is

referring. The portions ordered unredacted by Judge Hawley are therefore relevant to the issue presented in Nixon's Motion for New Trial. The United States fails to explain to this Court why any asserted privilege applies to preclude the production of the portion of Bass's statement to OIG that Judge Hawley ordered unredacted. For these reasons, the Court affirms Magistrate Judge Hawley's ruling with respect to this redaction.

**Redaction 4: Bass/OIG Emails (Doc. 201-4, at 5)**

Judge Hawley ordered unredacted the following portions of the same email communication between AUSA Bass and the OIG:

> Document number 4 is -- oh, at the end of the page we've just been discussing -- that's attachment 1, page 37 -- there is another email communication. It is from Tim Bass to OIG; it's dated December 5, 2017, at 1:53 p.m. In this document, there is a date that appears on the third line of the first paragraph. That date, I believe, should be unredacted. And then the next sentence at the bottom of this page that starts with "later" and goes through the middle on the next page to, right after the name "Tim," so -- and then a quotation mark. So the date in the, in the, on the third line should be unredacted; and then there's a section which is not redacted currently, which says "later that afternoon Judge Bruce," there's a redaction; that should be unredacted. Then there's already a sentence that's unredacted, "contacted Mr. Childress by phone, shortly after," that -- after that unredacted sentence, there are two more sentences that are redacted. It should be, I believe, unredacted, ending with the name "Tim."

Doc. 206-1, at 12–13.

**Analysis**

The first redaction Judge Hawley ordered removed was a date. The United States makes no argument to this Court why that decision amounts to clear error. The Second redaction Judge Hawley ordered removed referred to "the presiding judge in the *Schock* matter." Doc. 201-4, at 5. The Court affirms Magistrate Judge Hawley's ruling with respect to this redaction for the same reasons set forth in the analysis of Redaction 2, *supra*. The third redaction Judge Hawley ordered unredacted refers to an AUSA's statement that he did not want the *Schock* case and both he and

the interim United States Attorney believed Judge Bruce was hostile to AUSA Bass. Doc. 201-4, at 6. Judge Hawley found these passages both relevant to Nixon's claim and not covered by any asserted privilege. The United States makes no specific argument to this Court explaining why Judge Hawley's ruling was clearly erroneous, nor does the Court discern any basis to disagree with the Magistrate Judge's ruling. Accordingly, the Court affirms Magistrate Judge Hawley's ruling with respect to this redaction.

### Redaction 5: Bass/OIG Emails (Doc. 201-12, at 16)

Judge Hawley ordered unredacted the following portions of the same set of email communications between AUSA Bass and the OIG:

> Okay, the next one which I'm referring to is number 5, and I believe there's only one instance of this document that appears in these materials. It is on attachment 1, page 231. This is an email communication from Tim Bass to OIG dated December 5, 2017, 12:32. There is one sentence in this document which I believe is relevant and not outweighed by any other privilege. That is the last sentence of the first full paragraph, ["I am also able to provide additional information concerning Mr. Hansen's and Mr. Childress's repeated contact with Judge Bruce, the presiding judge in the Aaron Schock matter, if you would like."].

Doc. 206-1, at 14.

### Analysis

The only redaction Judge Hawley ordered removed in this passage is the statement by AUSA Bass to the OIG indicating his willingness to provide OIG with additional information about AUSA Hansen and USA Childress's repeated contact with Judge Bruce. The United States makes no specific argument to this Court explaining why Judge Hawley's ruling was clearly erroneous, nor does the Court discern any basis to disagree with the Magistrate's ruling. Accordingly, the Court affirms Magistrate Judge Hawley's ruling with respect to this redaction.

**Redaction 6: Tim Bass/PRAO Email (Doc. 201-12, at 16)**

Judge Hawley ordered unredacted AUSA Bass's forward to PRAO of an email

communication between Bass and the OIG:

> Okay. Number 6, again, only one instance in this document I could find. This is attachment number 2, page 280. This is an email communication from Tim Bass to PRAO; and for this document, it's my finding that with the exception of the name of the recipient -- so there are two redactions in the header and then a redaction of the name of the recipient -- and the last full paragraph of this document which appears on page 282, the remainder of this I find should be unredacted. All but the name of the recipient and the last paragraph, which is irrelevant; so that's pages 280 through 282, except for the recipient name in the header and in the body of the email and the last full paragraph. And to be clear, it is just that -- when I am referring to these communications, it's not the entire string; it's just that particular email within the string. Okay? That's the only instance of that document.

Doc. 206-1, at 15–16. This communication supplied OIG with the "additional information" Bass

suggested in Redaction 5, *supra*.

### Analysis

The United States argues the email forwarded to PRAO is protected by the attorney-client

privilege because PRAO is responsible for advising Assistant U.S. Attorneys and other DOJ

attorneys on issues of professional responsibility. Doc. 206, at 31–32. Further, the United States

argues that, "in light of the pendency of *Schock* and his role as an AUSA, Mr. Bass necessarily

sought PRAO's advice in anticipation of possible litigation or a state bar proceeding – which can

be "of an adversarial nature sufficient to constitute 'litigation' – regarding his professional

conduct." *Id*. at 32 (citing for comparison *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242,

262 (N.D. Ill. 2000)).

First, Nixon correctly points out—and the United States elsewhere concedes—the PRAO

forward is a duplicate of part of the Tim Bass/OIG Emails. Doc. 206, at 11; Doc. 207, at 9. The

Court agrees with Nixon that this communication is not covered by the attorney-client privilege

because AUSA Bass, as the holder of the privilege, disclosed the exact same information to OIG. Therefore, the communication was not confidential and is not protected by the attorney-client privilege. *See Powers v. Chi. Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) ("The attorney-client privilege protects communications *made in confidence* by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice.") (emphasis added).

Second, and contrary to the United States' assertion, it does not appear that AUSA Bass forwarded the OIG email to PRAO to seek "PRAO's advice in anticipation of possible litigation or a state bar proceeding." Doc. 206, at 32. Rather, it is apparent from a reading of the email that AUSA Bass forwarded the email to PRAO in his continued effort to raise concerns regarding the conduct of certain colleagues in the USAO and Judge Bruce. Accordingly, the Court affirms Magistrate Judge Hawley's ruling with respect to this redaction.

### Redaction 7: Bass Email to AUSA Peirson (Doc. 201-16, at 3–4)

Judge Hawley also ordered unredacted AUSA Bass's email to AUSA Peirson:

Number 7 is, begins on page 299, attachment number 3; it's a communication from Tim Bass to Elly Peirson, dated May 18, 2018. It runs from that page through halfway through page 300.… I find that the remainder of this communication should be unredacted in its entirety.

Doc. 206-1, at 16.

### Analysis

The United States makes no effort before this Court to explain why Judge Hawley's ruling was clearly erroneous. Rather, the United States simply rehashes the arguments previously raised before Judge Hawley. Doc. 206, at 36. While the discussion between AUSAs Bass and Peirson likely constitutes protected work product, Judge Hawley found that even if such

privilege applied, "the defendant's need for this and its relevance would outweigh that." Doc. 206-1, at 8.

This Court's review of the email leads to the same conclusion. The Court finds the following excerpt of AUSA Bass's email particularly illustrative of the relevance of the redacted material: "Judge Bruce's prior employment in this office and his close relationships and ongoing contacts with interim management of the office created a conflict of interest." Doc. 201-16, at 4. In short, AUSA Bass's email to Peirson is relevant because it tends to support Nixon's theory that Judge Bruce was actually or apparently biased in favor of the United States due to his close and continued relationships with the upper echelons of the USAO. Nixon has also established a necessity for producing the document, as there is no other way for Nixon to obtain the information from other sources. *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) ("The deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality."). Moreover, the United States completely fails to grapple with the issue of necessity before this Court, and thus waives any argument to the contrary.[5] *See e.g., Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court.… We apply that rule where a party fails to develop arguments related to a discrete issue.…"). Accordingly, the Court affirms Magistrate Judge Hawley's ruling with respect to this redaction.

---

[5] It appears the United States believes that all privileged material is immune from discovery, regardless of relevance or necessity. *See* Doc. 206, at 38 (citing *Baldridge v. Shapiro*, 455 U.S. 345, 360 (1982)). The United States' reliance on *Baldridge* is misplaced. The relevant portion of *Baldridge* discussed privilege in the context of the discovery provisions of Rule 26(b) of the Federal Rules of Civil Procedure, as they existed at the time of the dispute. The current version of Rule 26(b) explicitly allows for discovery of privileged material where the party shows it has a substantial need for the materials and cannot obtain equivalent materials without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii).

**Redaction 8: AUSA Peirson Email to Bass (Doc. 201-16, at 4–5)**

Judge Hawley next ordered unredacted portions of AUSA Peirson's email response to

AUSA Bass:

> On the next page, that's number 8; that is what I was referring to before. That's the email communication from Elly Peirson to Tim Bass; it's dated May 17, 2018, at 10:08 a.m. As it relates to that document, after the unredacted portion which says "Tim," the first two sentences of the first paragraph should be unredacted. The remainder of that paragraph should remain redacted. In the next paragraph, the second paragraph, the second sentence only should be unredacted. The rest is, in my opinion, irrelevant.

Doc. 206-1, at 17.

        **Analysis**

The first portion of this communication Judge Hawley ordered unredacted was Peirson's email response to Bass, wherein she confirmed the receipt of the Judge Bruce/Lisa Hopps emails exchanged during the *Nixon* trial and acknowledged Bass's recommendation that the email should be disclosed to the defense. Doc. 201-16, at 4. The second portion of the communication Judge Hawley ordered unredacted was Peirson's statement that she spoke to AUSA Eugene Miller and AUSA Gregg Walters to seek their advice. *Id.*

The United States argues before this Court that the communications are privileged work product because they convey the mental impressions and thought processes of the participating attorneys in relation to pending litigation. Doc. 206, at 36. While this may be true, the statements Judge Hawley ordered unredacted are relevant to Nixon's Motion for New Trial because they relate directly to Judge Bruce's ex parte communications during the *Nixon* trial and indicate who had knowledge of the ex parte communications and when they learned about the communications. Again, Nixon has also established a necessity for producing the document, as there is no other way for Nixon to obtain the information from other sources.

Additionally, the United States argues Judge Hawley held that relevance overrides all considerations of privilege. Doc. 206, at 37–38. The United States is mistaken. Judge Hawley first considered relevance, and then he considered whether any privilege would apply. *See* Doc. 206-1, at 6 ("If there's information that I found to be relevant that was proposed to be redacted by the government, then I considered whether or not any other of the asserted bases for the redaction would apply."). Thus, to the extent the passages Judge Hawley ordered unredacted were protected by the work product doctrine, Judge Hawley did not clearly error when he found Defendant's need for the information outweighed the United States' assertion of privilege. The Court affirms Magistrate Judge Hawley's ruling with respect to this redaction.

### Redaction 9:  Lisa Hopps Memorandum to EOUSA (Doc. 201-17, at 3)

Lisa Hopps sent a memorandum to Norman Wong, Principal Deputy Director of EOUSA, in August 2018. Judge Hawley ordered unredacted one paragraph and part of another from this memorandum:

> Okay. The last one is contained within document number -- it's attachment number 4, page 305. This is the memorandum. The only portion of this document which, in my opinion, contains relevant non-privileged information is on page 307, the first full paragraph on that page, beginning with the word "after" in that paragraph, ending with the word "stop." That paragraph should be unredacted. And then the next paragraph, beginning with the first sentence, should be unredacted through line 9, the unredaction ending with the word "immediately" at the end of that ninth line. So all of the preceding paragraph; the next paragraph beginning with the word "Patrick" through the word "immediately" nine lines down, that should be unredacted. The remainder, in my opinion, does not contain relevant information. And that's all I have for unredactions.

Doc. 206-1, at 19. Again, in order to provide a meaningful analysis of Magistrate Judge Hawley's ruling, the Court believes it necessary in this instance to refer with particularity to the statement at issue. Specifically, the portion Judge Hawley ordered unredacted read:

> After Colin became a Federal District Judge, Tim applied for an open magistrate position. I recall speaking to Colin on the phone and he was disparaging Tim and

his chances to become a magistrate judge. I became very angry and told him he had to stop and that he was "[expletive] with people's lives". He assured me he wouldn't interfere with Tim's application. Subsequently, another magistrate judge position became available. This time for Colin himself. Prior to applying, Tim met with Colin to ask if he thought he should apply and Colin told him he definitely should. In a later conversation with me, Colin laughed that Tim wouldn't even make it out of committee—he didn't. I again told him that his comment was out of line, wrong and that he needed to stop.

Patrick and our now Interim U.S. Attorney John Childress have a close relationship with Colin. USA Childress is a personal friend and is the only AUSA in our District that Colin has recused himself from hearing cases. Our prior USA James Lewis is also a personal friend of Colin. All three of them are more than aware of Colin's dislike of Tim. In fact, Colin has been unable to disconnect himself from our office. It's almost as if he is a silent part of management. No other federal judge in our district is in constant contact with our office and seems to know everything that is going on like Colin does. It's concerning to say the least. So when the Schock matter was assigned to Colin, you would think a motion for his recusal would have been filed immediately.

Doc. 201-17, at 3.

### Analysis

The United States argues in general terms before this Court that the Hopps Memorandum is protected by the deliberative process privilege and the work product doctrine, and further argues much of the content in the memorandum is irrelevant. Doc. 206, at 37–38. As Nixon rightly points out, the United States' brief before this Court is completely devoid of any discussion regarding Nixon's asserted need for the redacted documents. *See* Doc. 207, at 9 ("The government has not even established these privileges apply to the information ordered unredacted let alone explain how Judge Hawley's determination that Ms. Nixon's need for the information outweighs the privilege is clearly erroneous."). In the Court's view, this omission is itself sufficient grounds for finding no clear error in Judge Hawley's ruling and thus affirming his decision.

However, even if the Court were to excuse the United States' failure to address the issues material to this appeal, the Court believes a proper balancing of Nixon's demonstrated need for the documents against the United States' asserted privileges tips in favor of disclosure. The Court finds particularly relevant the statement from Hopps that "Colin has been unable to disconnect himself from our office. It's almost as if he is a silent part of management. No other federal judge in our district is in constant contact with our office and seems to know everything that is going on like Colin does." Doc. 201-17, at 3. This statement is significant because it goes to the heart of the issue presented in Nixon's Motion for New Trial—whether Judge Bruce was actually or apparently biased in favor of the United States due to his close and continuous relationship with the USAO management. Given the undoubted relevance of this document and the fact that Nixon has no other means of acquiring the information contained therein, the Court finds Judge Hawley did not clearly error when he ordered the above passages unredacted. The Court affirms Magistrate Judge Hawley's ruling with respect to this redaction.

**(B) SEALING**

Judge Hawley's analysis was necessarily limited by the fact that the redactions at issue were not available to the public (or the defense) at the time he made his ruling. Thus, in order to preserve the United States' right to appeal his decision, Judge Hawley issued his ruling in such a manner as to not reveal the contents of the redactions at issue. However, on appeal, the United States did not ask this Court to refrain from making publicly available the material ordered unredacted in the event Judge Hawley's ruling was affirmed. Although mindful of the sensitive or embarrassing nature of these materials, this Court has specifically referenced some of the materials previously redacted by the United States when necessary to develop a cogent and through analysis of the parties' arguments on appeal. Nonetheless, some of those materials

ordered unredacted are not repeated verbatim in this opinion and remain unavailable to the public. Accordingly, the Court directs the United States to immediately provide Defendant with the revised set of redacted documents which incorporate Judge Hawley's ruling. The Court further directs the United States to file on the public docket within seven days of this Order a revised set of redacted documents which incorporate Judge Hawley's ruling.

## CONCLUSION

For the reasons set forth above, Magistrate Judge Hawley's December 17, 2019 decision is AFFIRMED. The Court directs the United States to immediately provide Defendant with the revised set of redacted documents which incorporate Judge Hawley's ruling. The Court further directs the United States to file on the public docket within seven days of this Order a revised set of redacted documents which incorporate Judge Hawley's ruling.


Signed on this 10th day of February, 2020.

s/ James E. Shadid
James E. Shadid
United States District Judge